THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL C. IRIZARRY, Defendant and Appellant.

No. 9040. Argued December 10, 1941.—Decided February 19, 1942.

*Enrique Igaravídez* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney, Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Gloria Antommattei, a resident of Humacao, on October 26, 1940, filed in the municipal court a complaint against her husband Rafael C. Irizarry, charging him with abandonment of three minor daughters, born out of their marriage, in that he, for over six months, maliciously and without lawful excuse failed to furnish them with necessary food, clothing, and medical assistance.

The case was taken on appeal to the district court and the first document which appears in the record immediately after the complaint, is a motion to dismiss the prosecution

which was presented by the accused on March 28, 1941, the date set for the trial.

In said motion it is alleged that the transcript was filed in the court on October 15, 1940, that on March 13 the trial was set for March 28, 1941; that the accused had not requested nor consented to any continuance; and consequently that, as more than 120 days had elapsed from such filing to the date set for the trial, the constitutional rights of the accused to a speedy trial had been violated, and the prosecution should be dismissed in accordance with subdivision 2, Section 448 of the Code of Criminal Procedure.

At the commencement of the trial said motion was argued and denied on the ground that the same came too late. Thereupon the accused stated that he was not ready for trial, as he had only two days' notice and "the accused not being prepared for trial, the court" postponed the trial to the following April 12th, the parties being notified accordingly.

Then follows another motion to dismiss, dated at San Juan for Humacao on April 15, and filed on the 17th, wherein the facts stated in the first motion are reproduced, reference is made to the proceedings had on March 28, 1941, and it is further stated that on the night of April 11, the accused received the following telegram from the marshal of the court: "Please do not appear in court on the 12th but do so on the 18th instant." There appears an opposition filed by the district attorney on April 18. From it we copy the following paragraph:

"From what has been said, which is taken from the record that is made a part of this motion, it appears that on March 28, 1941, the defendant asked for a continuance. By applying for such a continuance the defendant retrospectively waived any right to a speedy trial which up to that moment he might have had (*Garcés* v. *District Court,* 55 P.R.R. 328, explaining the scope of *People* v. *Cepeda,* 31 P.R.R. 465), and placed himself outside the terms of paragraph 2 of Section 448 of the Code of Criminal Procedure (*Morales* v. *District Court,* 55 P.R.R. 853, last paragraph on page 855).

And only 21 days having elapsed since that time, his constitutional right to a speedy trial has not been affected."

The case having been called again for trial on April 18, 1941, the parties appeared and were heard on the motion which was overruled. The People introduced evidence and the defendant presented a motion for nonsuit which was denied. He then introduced his evidence and the court found him guilty of the offense of abandonment of children and sentenced him to pay a fine of $100 and in default of such payment to be confined ninety days in jail. It suspended said sentence, provided the defendant within the period of one week should properly attend to the matter of the unpaid allowances for support, and should continue to furnish to each of his legitimate daughters, Ivette, Wanda, and Carmen Gloria, $10 monthly for support.

Feeling aggrieved by that decision, the defendant took the present appeal, and he urges that the lower court erred in refusing to dismiss the prosecution, in ·rejecting certain evidence, in convicting him upon a single contradictory testimony unworthy of belief, and in denying his motion for nonsuit.

█ Let us examine the first error assigned. As already stated, the first motion to dismiss the prosecution was denied on the ground that the same had been tardily presented. That ruling of the court is supported by at least three decisions of this court.

In the case of *People* v. *Ortiz*, 46 P.R.R. 1, it was said: "The motion was not made before the trial but in the course thereof, and therefore came to late."

Shortly afterwards, in the case of *People* v. *Díaz*, 48 P. R.R. 443, 445, this court said: "The appellant presented a motion to dismiss the prosecution on the ground that the trial was not held within the 120 days following the filing of the complaint, and the denial of the motion by the court is assigned as error. The motion was filed on the day of the

trial, and we have already decided on several occasions that this should be done before the trial.''

The third decision was in the case of *People* v. *Cardona,* 58 P.R.R. 629, 632, and then it was said: ''Since the study that we have made of the record reveals that the first alleged error was not committed, as the motion filed the previous day and argued at the trial was tardy....''

It seems advisable to state with reference to that last decision that what was said therein should be applied only where the motion filed on the previous day has been presented so late or under such circumstances as to be equivalent to a filing on the day of the trial, and it seems opportune to add that the holding of this court finds support in the decisions of the courts in those States where the law on the matter is the same or similar to ours. See 16 C. J. 444, par. 802, note 63.

■ As to the second motion, the decisions similarly support the action of the trial court in refusing to dismiss the prosecution. We have seen that after the first motion had been decided adversely to the appellant, the latter stated that he was not ready for trial, and the court set another day for holding the same. Although nothing was expressly stated in the record, there is no doubt that the latter shows that the postponement of the trial was ordered, if not at the request, at least for the benefit of the appellant, and that the latter accepted it, and under those circumstances it is proper to conclude that he waived his right and submitted himself prospectively to the discretion of the court. It does not appear that the court committed any abuse in the exercise of such discretion.

As was held in *Morales* v. *District Court,* 55 P.R.R. 853, ''after the trial of a case has been postponed at the defendant's request, the question of dismissal of the prosecution because of subsequent delays, is a matter within the discretion of the lower court.''

■ The second assignment of error is formulated thus: "The judge of the lower court erred in rejecting the evidence of the defendant regarding the state of the proceedings had in the district court in a civil action for the fixing of an allowance for support." The evidence offered and rejected as immaterial consisted in a certified copy of a verified motion filed by the informer Gloria Antommattei in the suit for divorce brought against her by her husband in the District Court of San Juan.

The motion is entitled: "Regarding *litis expensa,* fixing of residence, and temporary custody of the children." And it was sworn on September 14, 1939. It appears therefrom that only the smallest of the four children born out of the marriage then lived with the mother. At the time of the issuance of the certificate—October 11, 1940—the motion had not yet been decided by the District Court of San Juan.

According to the defense, the purpose of the certificate was to aid in showing that the complainant had deviated from the legal course to be followed and had of her own initiative taken charge of the other daughters in order to cause the present proceedings to be instituted against her husband.

We think that the court did not commit the error charged, because, as stated by it, even if it were conceded that the accused should be able to establish the truth of what he had asserted, that is, that the mother had taken charge of the daughters without waiting for the determination by the court of the action of divorce, this would not constitute a justification of his conduct in abandoning his daughters by failing to furnish them with the necessary maintenance, clothing, education, and medical attendance during several months.

■ The third and fourth assignments can and should be considered and decided together, as both of them refer to the weighing of the evidence. It is true that the only evidence for the prosecution was the testimony of the complainant, but this court has already held—*People* v. *De Jesús,* 57 P.

R.R. 694—that in cases of abandonment of children, the law does not require that the testimony of the informer mother should be corroborated, as her sole testimony, if believed, is sufficient for a conviction.

We have carefully read said testimony and we find it to be sufficient and worthy of credit. It reveals a nervous temperament on the part of the witness. It contains certain contradictions which were satisfactorily explained afterwards, and there are revealed in it flashes of passion and rancor; but all this is in keeping with the nature of the suit and does not affect the credibility of the testimony.

The evidence adduced by the defendant shows that he looked after his daughters on former occasions, but not after the three children lived with the mother at the time referred to in the complaint, and it fails to satisfactorily establish that he was really unable to fulfill his obligation.

That evidence reveals the interest of the father's sisters, who seemed to be intelligent and responsible persons, endeavoring to do everything they could for the benefit of their nieces, rather than that of the father for his daughters.

This is one of the many unfortunate cases where the parents do not realize the harm which they cause to their children by reason of their disagreements. The children grow up nervous, perhaps saddened for the rest of their lives, as each of the parents believes that the other is in the wrong when, in point of fact, both are to blame and neither is sufficiently generous to yield in the interest of the children.

The prevention of such occurrences is not a matter within our power. We are only called upon to decide whether or not the trial court was justified in holding as proven that the father, during six months, wilfully and without lawful excuse failed to provide necessary food, clothing, or medical attendance—Section 2637 of the Penal Code, 1937 ed.—for his three daughters, who lived with their mother, and for

the reasons which we have already stated, an examination of the record leads us to the conclusion that such holding was justified, none of the errors assigned by the appellant having been committed. Therefore, the appeal must be denied and the judgment appealed from affirmed.

Mr. Justice Snyder took no part in the decision of this case.